IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRENDA M. KELLY and
LORIN KELLY,

     Plaintiffs,

v.

BAYVIEW LOAN SERVICING, LLC,

     Defendant.

CIVIL ACTION FILE NO.

1:15-CV-1496-WSD-CMS

## <u>NON-FINAL REPORT AND RECOMMENDATION</u>

This matter arises in connection with foreclosure proceedings regarding real property located at 3550 Umatilla Lane, S.W., Atlanta, Georgia 30331. Before the Court is the Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Bayview Loan Servicing LLC ("Bayview") on May 11, 2015. (Doc. 2). Plaintiffs Brenda M. Kelly and Lorin Kelly, through counsel, responded to the Motion (Doc. 6), and Bayview replied (Doc. 9).

For the reasons discussed below, the undersigned **RECOMMENDS** that Bayview's Motion to Dismiss (Doc. 2) be **GRANTED** in part and **DENIED** in part.

## I.   ALLEGATIONS IN THE COMPLAINT

Plaintiffs — along with Michael Kelly, who is now deceased — obtained a residential mortgage loan in the amount of $214,020 on June 29, 2007, from Pine State Mortgage Corporation to purchase real property located at 3550 Umatilla Lane, S.W., Atlanta, Georgia 30331 (the "Property").  (Compl. ¶¶5, 7; Doc. 1-1 at p.29-39).   As security for the loan, Plaintiffs executed a security deed (the "Security Deed") to Mortgage Electronic Registration Systems, Inc. ("MERS"),[1] as nominee for Pine State Mortgage Corporation, its successors and assigns.  (Doc. 1-1 at p.29-39).   The Security Deed contains a power of sale provision authorizing

---

[1]   The Georgia Supreme Court has described the MERS system as follows:

MERS, which began operating in 1997, is a private company created by the mortgage banking industry for the purpose of establishing a centralized, electronic system for registering the assignments and sales of residential mortgages, with the goal being the elimination of costly paper work every time a mortgage loan is sold.  Under the MERS system, the borrower and the original lender name MERS as the grantee of any instrument designed to secure the mortgage loan. The security instrument is then recorded in the local land records, and the original lender registers the original loan on MERS's electronic system.  Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system.

Taylor, Bean & Whitaker Mort. Corp. v. Brown, 583 S.E.2d 844, 845 n.1 (Ga. 2003)(internal citations omitted).

the assignee to non-judicially foreclose on the Property in the event of nonpayment and default on the loan.  (Doc. 1-1 at p.34 §18).

In Section 9 of the Security Deed, certain United States Department of Housing and Urban Development ("HUD") regulations are incorporated into the Security Deed:

> 9. Grounds for Acceleration of Debt.
>
> (a) Default.  Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
> (i) Borrower defaults by failing to pay in full any monthly payment required by this Security instrument prior to or on the due date of the next monthly payment, or
>
> (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
>
> . . .
>
> (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration of foreclosure if not permitted by regulations of the Secretary.

(Compl.¶¶ 16, 17; Doc. 1-1 at p.32 §9).  Plaintiffs allege Bayview failed to comply with HUD regulations requiring it to (1) provide loan information to Plaintiffs and arrange an individual loan consultation upon their request, 24 C.F.R. § 203.508; (2)

adapt its collection techniques to Plaintiffs and their circumstances, 24 C.F.R. § 203.600; (3) conduct a face-to-face interview with Plaintiffs before three monthly mortgage installments were unpaid, 24 C.F.R. § 203.604; (4) inform Plaintiffs of other available assistance or the names and addresses of HUD officials to whom further communications could be addressed for assistance, 24 C.F.R. § 203.604; (5) evaluate on a monthly basis all of the loss mitigation techniques provided by 24 C.F.R. § 203.501 or implement such loss mitigation techniques before four full monthly installments due on the mortgage were unpaid, 24 C.F.R. § 203.605; (6) ensure that servicing requirements within the HUD regulations were met, 24 C.F.R. § 203.606; and (7) evaluate whether Plaintiffs' default was due to circumstances beyond their control and grant them special forbearance relief, 24 C.F.R. § 203.614.  (Compl. ¶¶19-25, 36-42).

Attached to the Security Deed is a Waiver of Borrower's Rights signed by Plaintiffs acknowledging the right to accelerate the debt and sell the premises by nonjudical foreclosure upon default without additional notice; a foreclosure disclosure required by O.C.G.A. § 7-1-1014(3) informing Plaintiffs that if they fail to meet any condition or term of a document they signed in connection with obtaining the mortgage loan, they may lose the Property through foreclosure; and the Closing Attorney's Affidavit confirming that the closing attorney informed

Plaintiffs, prior to the time that they signed the Security Deed and Waiver of Borrower's Rights, that the terms and provisions of the deed to secure debt authorized the sale of the Property by nonjudicial foreclosure under a power of sale. (Doc. 1-1 at 39).

Plaintiffs allege that in 2014, they sought loan modification assistance from Bayview, and worked with Bayview on a loan modification before and after the death of Michael Kelly in March 2014. (Compl. ¶¶10, 11, 15). Plaintiffs allege that when they notified Bayview of Michael Kelly's passing, Plaintiffs were advised to "go ahead grieve and worry about planning the funeral." (Compl. ¶¶ 12, 13, 63). Plaintiffs allege that Bayview "promised the Plaintiffs that the foreclosure sale was put on hold[,]" and "at the same time, the Plaintiffs were working on a loan modification with [Bayview.]" (Compl. ¶¶ 64, 68).

Plaintiffs allege that the law firm of Pendergast & Associates, P.C. foreclosed on the Property on the first Tuesday of May 2014, and that Plaintiffs received no prior notice that the foreclosure would take place. (Compl. ¶¶ 26, 27, 28, 29, 30). Specifically, Plaintiffs allege Bayview never advised Plaintiffs that they were pursuing a foreclosure sale; that Plaintiffs "do not recall" receiving a foreclosure notice, and that Plaintiffs found out about the foreclosure sale after it took place. (Compl. ¶¶ 27, 28, 30). Plaintiffs further allege that on July 29, 2014,

5

Bayview filed an eviction proceeding against Plaintiffs, that a writ of possession was subsequently granted, and that Plaintiffs were evicted on March 31, 2015 without any advance notice or "a demand for strict compliance with the writ of possession." (Compl. ¶¶ 31, 33, 34).

Based on these allegations, Plaintiffs asserts claims against Bayview for breach of contract (Count 1), wrongful foreclosure (Count 2); promissory estoppel (Count 3); declaratory judgment (Count 4); wrongful eviction (Count 5); and intentional infliction of emotional distress (Count 6). Plaintiffs seek to set aside the foreclosure sale of the property and to recover compensatory and punitive damages, attorneys' fees, and costs.

## II.   BANKRUPTCY PROCEEDINGS

In support of its Motion to Dismiss, Bayview attached documents from Brenda and Michael Kelly's 2012 bankruptcy proceeding. Bayview notes that Brenda and Michael Kelly filed for Chapter 7 bankruptcy protection on July 2, 2012, and that Bayview's predecessor-in-interest, Bank of America, N.A., sought relief from the automatic stay in order to foreclose on the Property. (Doc. 2-1 at 3-4 n.1 (citing In re Kelly, No. 12-66680-CRM (N.D. Ga. Bankr.), Docket Entries 17

& 19)).[2]  Bayview notes that in seeking relief from the automatic stay in the bankruptcy proceeding, Bank of America, N.A. stated that as of October 17, 2012, Plaintiffs had failed to make 22 loan payments, owed $301,639.96 on their loan, and that the estimated market value of the Property was $144,300.00.  Id.[3]  On December 11, 2012, the bankruptcy court granted Bank of America, N.A., relief from the automatic stay in order to foreclose on the Property.  In re Kelly, No. 12-66680-CRM (N.D. Ga. Bankr.), Docket Entry 19.

## III.  JURISDICTION

Plaintiffs filed the original complaint initiating this action in the Superior Court of Gwinnett County, Georgia, on April 1, 2015.  (See Doc. 1-1).  On May 4, 2015, Bayview removed the action to this Court.  (Doc. 1).  In its Notice of

---

[2]    The undersigned has considered the filings and proceedings in the Brenda and Michael Kelly's bankruptcy action in reviewing the merits of Bayview's Motion to Dismiss.  While Plaintiffs request that the Court not consider any facts or evidence outside of the Complaint (Doc. 6 at 9), Plaintiffs do not challenge the authenticity of the bankruptcy records cited by Bayview.  As part of the public record, this Court may take judicial notice of matters contained in the documents without converting the Rule 12(b)(6) motion into a Rule 56 motion.  Serpentfoot v. Rome City Comm'n, 322 F. App'x 801, 807 (11th Cir. 2009) (unpublished) (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999)); Halmso v. Bomardier Aerospace Corp., 404 F. App'x. 376, 377 (11th Cir. 2010) (unpublished).

[3]    See In re Kelly, No. 12-66680-CRM (N.D. Ga. Bankr.), Docket Entry 17 at ¶¶ 5, 7, 8.

Removal, Bayview states that the case is removable because Plaintiffs' claims turn on substantial questions of federal law, and because the parties are completely diverse and the amount in controversy exceeds $75,000. (Doc. 1).

Under 28 U.S.C. § 1441, a defendant may remove a claim to federal court "if the case could have been filed in federal court originally." Hill v. BellSouth Telecomm., Inc., 364 F.3d 1308, 1314 (11th Cir. 2004). As the proponent of removal, Bayview must prove, by a preponderance of the evidence, the existence of federal jurisdiction. See McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002). District courts have "federal question jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" Hill, 364 F.3d at 1314 (quoting 28 U.S.C. § 1331). A claim "arises under" federal law when "the face of the plaintiff's properly pleaded complaint" presents a federal question. Id. In addition, pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction for all civil actions where the amount in controversy exceeds $75,000.00 and the controversy is between citizens of different states.

Here, removal is not proper based on federal question jurisdiction. No federal question is present on the face of the Complaint, and there is no private right of action based on HUD regulations or the HUD Handbook. See Campbell v. Wells Fargo Bank, N.A., No. 1:14-CV-3341-TWT-JFK, 2015 WL 5797852, at *5

(N.D. Ga. Aug. 12, 2015) (citing <u>Bates v. JPMorgan Chase Bank, NA</u>, 768 F.3d 1126, 1130–31 (11th Cir. 2014) ("there is no express or implied statutory right of action for HUD violations"); <u>Krell v. Nat'l Mortg. Corp.</u>, 448 S.E.2d 248, 249 (Ga. Ct. App. 1994) ("holding violation of HUD regulations did not support a private cause of action")).  Moreover, the Plaintiffs' alleged claims for relief are based on only state law.  Thus, the Court cannot exercise federal question jurisdiction over this matter.

However, the parties are diverse in citizenship, and the amount in controversy exceeds $75,000.00.  (Compl. ¶¶ 1, 2, 96; <u>see</u> Doc. 1-1 at p.29; Doc. 1-2).  Thus, this action may proceed based on the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

## IV.    <u>LEGAL STANDARD</u>

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be granted only if the complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007).  A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570)).  In considering a motion to dismiss, the court must eliminate any allegations in the complaint that are merely legal conclusions, and then, where there are well-pleaded factual allegations, assume their veracity and determine whether they plausibly give rise to an entitlement to relief.  Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010).

Although reasonable inferences are made in a plaintiff's favor in considering a motion to dismiss, "'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n. 10 (11th Cir. 1996)).  In addition, courts may infer from the factual allegations in the complaint "obvious alternative explanations" that suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.  Twombly, 550 U.S. at 567.

## V.    DISCUSSION

Bayview argues that the Complaint should be dismissed in its entirety because Plaintiffs' allegations do not sufficiently demonstrate that any of Bayview's alleged actions or inactions caused Plaintiffs' complained of injuries.

10

(Doc. 2-1 at 5).  Bayview argues that Plaintiffs' injuries were caused by their own failure to make mortgage payments and subsequent default on the Security Deed, and not by any act or omission attributable to Bayview.

## A.    __Breach of Contract__

Count 1 of the Complaint alleges that Bayview breached the Security Deed by foreclosing on the Property without first complying with the HUD Regulations incorporated into the Security Deed and without providing proper notice prior to foreclosure and eviction.  In the Complaint, Plaintiffs allege that they sought loan modification assistance from Bayview in 2014 and worked with Bayview on a loan modification both before and after the death of Michael Kelley in March 2014. (Compl. ¶¶ 10, 11, 15).  Plaintiffs allege that Bayview never advised Plaintiffs that it was pursuing a foreclosure sale, that Plaintiffs "do not recall receiving the foreclosures notices," and that Plaintiffs "found out about the foreclosure sale after the foreclosure took place."  (Compl. ¶¶27, 28. 30.)  In support of their breach of contract claim, Plaintiffs allege that Bayview failed to comply with numerous HUD regulations requiring Bayview to provide loan information to Plaintiffs and arrange an individual loan consultation on request; adapt its collection techniques to Plaintiffs and their circumstances; conduct a face-to-face interview with Plaintiffs before three monthly mortgage installments were unpaid; inform

Plaintiffs of other available assistance or the names and addresses of HUD officials to whom further communications could be addressed for assistance; evaluate on a monthly basis all of the loss mitigation techniques provided by 24 C.F.R. § 203.501 or implement such loss mitigation techniques before four full monthly installments due on the mortgage were unpaid; ensure the servicing requirements within the HUD regulations were met; and failed to provide Plaintiffs with proper notice prior to commencing the foreclosure proceedings.  (Compl. ¶¶19-25, 36-42).

In its Motion, Bayview does not dispute that the Complaint alleges a breach of the Security Deed.[4]  Instead, Bayview contends that the claim should be dismissed because there were no "resultant damages" caused by Bayview's alleged failure to comply with the HUD regulations incorporated into the Security Deed and failure to provide proper notice.  (Doc. 2-1 at 8-10; Doc. 9 at 3-7).  Bayview notes that Brenda and Michael Kelly filed for Chapter 7 bankruptcy protection on July 2, 2012, and in seeking relief from the automatic stay in the bankruptcy

---

[4]    Plaintiffs' Security Deed clearly references the HUD regulations stating that the lender is limited by the regulations issued by the Secretary before acceleration and that the Security Deed "does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary."  (Doc. 1-1 at 32 §9(a)).  Taken in context, this language makes compliance with HUD regulations a condition precedent to Bayview's right to accelerate the debt or exercise the power of sale. See Bates, 768 F.3d at 1131-32.  Thus, Plaintiffs have sufficiently asserted a duty owed to them by Bayview.   This duty includes a duty to provide proper notice of default and attempts to cure as detailed in the HUD Regulations cited by Plaintiffs.

proceeding, Bank of America, N.A., Bayview's predecessor-in-interest, stated that as of October 17, 2012, the Kellys had failed to make 22 loan payments, owed $301,639.96 on their loan, and that the estimated market value of the Property was $144,300.00.  Id.[5]  Bayview argues that any damages Plaintiffs suffered were not "resultant damages" stemming from Bayview's breach but, instead, were the result of their own default and the substantial debt they owed prior to Bayview's acceleration and foreclosure of the Property.  (Doc. 2-1 at 10, Doc. 9 at 7).

Plaintiffs argue in response that Bayview had a duty to comply with the HUD regulations incorporated into the Security Deed, and that the Complaint alleges sufficient facts to show that Bayview failed to follow the HUD regulations and failed to give Plaintiffs proper notice of default, which resulted Plaintiffs' default and injuries.  (Doc. 6 at 7-9).

In order to establish a breach of contract claim under Georgia law, Plaintiffs must prove a (1) breach of the contract, (2) resultant damages (3) for the party who has the right to complain about the contract being broken.  Inland Atlantic Old Nat'l Phase I, LLC v. 6425 Old Nat'l, LLC, 766 S.E.2d 86, 92 (Ga. Ct. App. 2014).  Georgia law supports a theory of breach of contract where a foreclosure

---

[5]     See In re Kelly, No. 12-66680-CRM (N.D. Ga. Bankr.), Docket Entry 17 at ¶¶ 5, 7, 8.

occurred without providing proper notice of default.  BAC Home Loans Serv., LP

v. Wedereit, 759 S.E. 2d 867, 871-72 (Ga. Ct. App. 2014), rev'd on other grounds,

773 S.E.2d 711 (Ga. 2015).  Under Georgia law, a security deed which includes a

power of sale is a contract, and its provisions are controlling as to the rights of the

parties thereto and their privies.  Stewart v. Suntrust Mort., Inc., 770 S.E.2d 892,

897 (Ga. Ct. App. 2015).  The Eleventh Circuit has "recognized breach of contract

claims based on a failure to comply with HUD regulations where the mortgage

instrument expressly conditions the mortgagee's right to accelerate or sell the

property on compliance with HUD regulations."  Bates, 768 F.3d at 1131.[6]

---

[6]     In Bates, the Eleventh Circuit held that Georgia courts would hold that HUD
regulations clearly referenced in a deed as conditions precedent to the power to
accelerate and the power of sale could form the basis of a breach of contract action.
768 F.3d at 1132.  Before reaching this conclusion, the Eleventh Circuit noted that:

> Under Georgia law, a condition precedent to a right or obligation set
> out in a contract must be satisfied in order for the right to accrue.  See
> Brogdon v. Nat'l Healthcare Corp., 103 F.Supp.2d 1322, 1344 (N.D.
> Ga. 2000).  In determining whether a contract contains a condition
> precedent, Georgia courts look at the language of the agreement itself.
> Conditions precedent, although "not favored in interpreting contracts,
> are created by language such as 'on condition that,' 'if,' and
> 'provided,' or by explicit statements that certain events are to be
> construed as conditions precedent."  Massih v. Jim Moran & Assocs.,
> Inc., 542 F. Supp.2d 1324, 1330 (M.D. Ga. 2008); see Munson v.
> Strategis Asset Valuation & Mgmt., Inc., 363 F. Supp. 2d 1377, 1382
> (N.D. Ga. 2005).  Additionally, to the extent that a regulation is
> incorporated by reference into a contract, including as a condition
> precedent, it must be referenced in a way that establishes a

To recover damages for Bayview's purported breach of contract, Plaintiffs must allege that Bayview's failure to comply with HUD regulations, and resulting premature acceleration of the loan and premature exercise of the power of sale under the Security Deed, resulted in damages that would not have occurred but for the breach.  See Bates, 768 F.3d at 1133.  In Bates, the Eleventh Circuit held that in a post-default breach of contract claim, evidence of damages was insufficient for the claim to survive summary judgment where the property at issue had not been foreclosed upon and there was no evidence in the record of resultant damages.  768 F.3d at 1133.  By contrast, in the instant case, the foreclosure has already occurred, and the matter is before the Court on a motion to dismiss, which merely tests the sufficiency of the complaint.

Bayview argues that because Plaintiffs failed to make 22 loan payments as of October 2012, and because Plaintiffs do not allege that they had the ability or intent to cure default either before or after the acceleration, there is no causal relationship between the alleged breach and any of Plaintiffs' alleged injuries.

---

"reasonably clear and ascertainable meaning."  Bowman v. Walnut Mountain Prop. Owners Ass'n, Inc., 553 S.E.2d 389, 393 (Ga. Ct. App. 2001); see Goldman v. Vinson, 535 S.E.2d 305, 307 (Ga. Ct. App. 2000).

Id. at 1131-32.

While a mortgagor's failure to make loan payments "is fatal to her claim for breach of contract and wrongful foreclosure, as her 'alleged injury was solely attributable to her own acts or omissions,'" Rourk v. Bank of Am., N.A., 587 F. App'x 597, 600 (11th Cir. 2014) (unpublished) (quoting Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E.2d 842, 845 (Ga. Ct. App. 2004)), at this early stage in the proceedings, the undersigned finds that Plaintiffs have plausibly alleged a claim for breach of contract.  While it is possible to infer default from Plaintiff's allegations regarding their 2014 loan medication requests and the status of Plaintiffs' loan on October 2012, the undersigned finds that based on the allegations in the Complaint, it is plausible that the damages Plaintiffs allege they suffered resulted from Bayview's failure to comply with the HUD regulations and fulfill the conditions precedent to acceleration and foreclosure in the Security Deed.  The HUD regulations cited by Plaintiffs required Bayview to repeatedly evaluate Plaintiffs' loan and offer resources, information, and various degrees of assistance.  Thus, at this early stage in the proceedings, the undersigned cannot say that Plaintiffs' claims completely lack a causal link between the alleged breach and damages.  See Campbell v. Wells Fargo Bank, N.A., 1:14-cv-3341-TWT-JFK, 2015 WL 5797852, at *8-9 (N.D. Ga. Aug. 12, 2015) (denying a motion to dismiss a breach of contract claim where the plaintiff alleged the defendant failed to satisfy a HUD

regulation to have a face-to-face interview with the borrower that was incorporated into the security deed prior to foreclosure).   Accordingly, the undersigned **RECOMMENDS** that Bayview's Motion to Dismiss Plaintiffs' breach of contract claim (Count 1) be **DENIED**.

**B.**   <u>**Wrongful Foreclosure**</u>

In Count 2, Plaintiffs allege that Bayview failed to comply with Georgia Code Section 23-2-114 when Bayview foreclosed on the Property without first satisfying the HUD requirements set forth in Section 9 of the Security Deed. (Compl. ¶¶ 49, 50, 52).  Plaintiffs allege that this failure invalidated the May 2014 foreclosure sale.  (Compl. ¶ 56).  Bayview again argues that Plaintiffs have not shown a causal connection between Bayview's alleged failure to comply with the HUD regulations and their loss of the Property because Plaintiffs do not allege that they cured their default or were making regular payments on the loan prior to the foreclosure sale.  (Doc. 2-1 at 11-13).

To state a valid claim for wrongful foreclosure in Georgia, a plaintiff must allege a legal duty owed to the plaintiff by the foreclosing party, a breach of that duty, a causal connection between the breach and the injury sustained, and damages.  <u>Hall v. HSBC Mort. Servs., Inc.</u>, 581 F. App'x 800, 803 (11th Cir. 2014) (unpublished) (citing <u>Gregorakos v. Wells Fargo Nat'l Ass'n</u>, 647 S.E.2d 289, 292

(Ga. Ct. App. 2007)).  A foreclosing party has the duty to exercise fairly the power of sale in a deed to secure debt.  O.C.G.A. § 23-2-114.  If the foreclosing party fails to comply with this statutory duty, the debtor may seek to set aside the foreclosure or sue for damages for the tort of wrongful foreclosure.  Roylston v. Bank of Am., N.A., 660 S.E. 2d 412, 417 (Ga. Ct. App. 2008).  Georgia law supports a theory of wrongful foreclosure based on the failure to give proper pre-acceleration notice.  Wedereit, 759 S.E. 2d at 871-72.

"A claim for wrongful exercise of the power of sale can be asserted even though a debt was in default."  Brown v. Freedman, 474 S.E.2d 73, 76 (Ga. Ct. App. 1996).  However, a claim by a debtor in default will only be successful if the debtor is able to prove that the foreclosing party was the cause of the default.  Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.Ed. 2d 842, 845 (Ga. Ct. App. 2004).  In other words, the debtor must allege that their injury was caused by the defendant's acts or omissions.  Id.; Haynes v. McCalla Raymer, LLC, 793 F.3d 1246, 1253 (11th Cir. 2015).

Here, the undersigned cannot say with certainty that, based on the allegations in the Compliant, Plaintiffs would be unable to establish causation upon further development of the factual record.  While Plaintiffs do not allege that they cured any default or were making regular payments prior to the foreclosure sale, it

is plausible that their injuries were caused by Bayview's failure to comply with the HUD regulations requiring it to adapt its collection techniques to Plaintiffs' circumstances, and to inform Plaintiffs of available assistance.  Accordingly, it would be inappropriate to dismiss their wrongful foreclosure claim at this early stage of the proceeding.  Thus the undersigned **RECOMMENDS DENYING** Bayview's Motion to Dismiss with regard to Plaintiffs' wrongful foreclosure claim (Count 2).

## C.  <u>Promissory Estoppel</u>

In Count 3, Plaintiffs contend that under the doctrine of promissory estoppel, Bayview's alleged March 2014 verbal promise to put the foreclosure sale "on hold" should be enforced.  (Compl.¶¶ 63-69).  Bayview contends that Plaintiffs' promissory estoppel claim should be dismissed because the alleged promise is too indefinite to be enforceable because Plaintiffs do not allege any facts to show they relied upon the promise to their detriment, and that an oral promise to lend money, or regarding any interest concerning land, is unenforceable.  (Doc. 2-1 at 14-16).  Plaintiffs respond that the allegations in the Complaint are sufficient to show that they did rely on Bayview's promise to put the foreclosure sale on hold, that their reliance was reasonable because Bayview did, in fact, put the sale on hold.  (Doc. 6 at 11).

19

Under Georgia law, a claim for promissory estoppel "requires a showing that (1) the defendant made certain promises, (2) the defendant should have expected that the plaintiffs would rely on such promises, and (3) the plaintiff did in fact rely on such promises to their detriment." Adkins v. Cagle Foods JV, LLC, 411 F.3d 1320, 1326 (11th Cir. 2005); Hendon Props., LLC v. Cinema Dev., LLC, 620 S.E.2d 644 (Ga. Ct. App. 2005); see also O.C.G.A. § 13-3-44(a).  "Promissory estoppel does not apply to a promise that is vague, indefinite, or of uncertain duration." Mariner Healthcare, Inc. v. Foster, 634 S.E.2d 162, 168 (Ga. Ct. App. 2006); see Griffin v. State Bank of Cochran, 718 S.E.2d 35, 43 (Ga. Ct. App. 2011); Bridges v. Reliance Trust Co., 422 S.E.2d 277, 280 (Ga. Ct. App. 1992) ("estoppel applies to representations of past or present facts and not to promises concerning the future, especially where those promises concern unenforceably vague future acts.") (internal citations and quotations omitted).  A promise enforceable by promissory estoppel does not need to meet the formal requirements of a contract, but it must have been communicated with sufficient particularity to enforce the commitment.  Davidson v. Maraj, 609 F. App'x 994, 1001 (11th Cir. 2015)(unpublished) (citing Mooney v. Mooney, 538 S.E.2d 864, 868 (2000)); see also 20/20 Vision Ctr., Inc. v. Hudgens, 345 S.E.2d 330, 334 (Ga. 1986) (rejecting the argument that the statute of frauds bars a promissory estoppel claim).

20

Here, Plaintiffs' allegations are insufficient to support a claim for promissory estoppel.  Plaintiffs fail to allege sufficient facts to identify the specific terms of the "promise" Bayview made regarding the "hold" on the foreclosure of the Property.  Bayview's purported promise was uncertain as to material terms, including the length of time the foreclosure sale would be put "on hold."  Because the alleged promise was vague and indefinite, it cannot form the basis of a promissory estoppel claim.  See Ga. Inv. Int'l, Inc. v. Branch Banking & Tr., 700 S.E.2d 662, 664 (Ga. Ct. App. 2010) (promise to refinance loan or provide a line of credit for 12 months with no specified interest rate was too vague and indefinite to sustain promissory estoppel claim); Bridges v. Reliance Tr., 422 S.E.2d 277, 279-80 (Ga. Ct. App. 1992) (alleged promise to make a future loan that contained no specific interest rate or maturity date constitutes an unenforceably vague future act cannot serve as the basis for a claim of promissory estoppel); Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1281-82 (11th Cir. 2003) (affirming district court's dismissal of promissory estoppel claim under Georgia law where medical supply contract was for an "indefinite duration").

In addition, even if Bayview's statement could be construed as a promise that was definite and clear, it was unreasonable for Plaintiffs to rely on it. Promissory estoppel cannot be applied unless the promisee reasonably relied on the

21

promise.  Abdullahi v. Bank of Am., NA, 549 F. App'x 864, 867 (11th Cir. 2013) (unpublished) (citing Gerdes v. Russell Rowe Commc'ns, 502 S.E.2d 352, 354 (Ga. Ct. App. 1998)).  Because the promise was ambiguous, it was unreasonable for Plaintiffs to believe that Bayview would never foreclose on the Property. Moreover, Plaintiffs' reliance was unreasonable in light of the terms of the written agreement between the parties, the Security Deed, which states: "Extensions of time for payment or modification of amortization of the sum secured by this Security Instrument granted by Lender to Borrower . . . shall not operate to release the liability of Borrower . . ."  (Doc. 1-1 at 32 §11).  Accordingly, the undersigned **RECOMMENDS** that Bayview's Motion to Dismiss Plaintiffs' promissory estoppel claim (Count 3) be **GRANTED**.

## D.   **Declaratory Relief**

Plaintiffs seek a declaration "that Defendant did not provide Plaintiff[s] with proper notice of default and acceleration prior to acceleration of the debt; that consequently Debtor did not comply with the language and conditions of the Security Deed; that Defendant breached this obligation and prematurely commenced foreclosure proceedings against Plaintiffs."  (Compl. ¶ 76).  Bayview argues that Plaintiffs are not entitled to a declaratory judgment because they fail to identify any uncertainty or insecurity about a future event that would warrant a

22

declaratory judgment.  (Doc. 2-1 at 17-18).  Bayview also argues that Plaintiffs retain no legal interest in the foreclosed property and that Plaintiffs' request for a declaratory judgment should be dismissed.  (Doc. 2-1 at 18).  Plaintiffs argue in response that the allegations in the Complaint show that the power of sale was not properly exercised and that the question of whether Plaintiffs were divested of their rights in the Property remains a justiciable controversy.  (Doc. 6 at 12-13).

The purpose of Georgia's Declaratory Judgment Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; [it] is to be liberally construed and administered."  O.C.G.A. § 9-4-1. The Act provides that declaratory judgment may be issued only in cases of actual controversy.  O.C.G.A. § 9-4-2.  A justiciable controversy exists where a concrete issue is present, a definite assertion of legal rights, and a positive legal duty with respect thereto, which are denied by the adverse party.  Higdon v. City of Senoia, 538 S.E.2d 39, 42 (Ga. 2000).  Declaratory judgment is available under Georgia law where a party establishes that a declaratory judgment is necessary to relive him or her of the risk of taking some future action that, without direction, would jeopardize his or her interests.  Milani v. One West Bank, FSB, 491 F. App'x 977, 979 (11th Cir. 2012) (unpublished) (citing Porter v. Houghton, 542 S.E. 2d 491, 492 (Ga. 2001)).  "The object of the declaratory judgment is to permit

determination of a controversy before obligations are repudiated or rights are violated . . . its purpose is to permit one who is walking in the dark to ascertain where he is and where he is going, to turn on the light before he steps rather than after he has stepped in a hole." Loyd v. City of Irwinton, 236 S.E.2d 889, 890 (Ga. Ct. App. 1977) (internal citations and quotations omitted).

Here, Plaintiffs' Complaint contains insufficient factual allegations to show that there is a threatened legal injury at the present time or that there is any uncertainty about a future action by Plaintiff in this case. According, the undersigned **RECOMMENDS** that Bayview's Motion to Dismiss Plaintiff's request for a declaratory judgment (Count 4) be **GRANTED**.

## E. <u>Wrongful Eviction</u>

Bayview argues that because it evicted Plaintiffs through legal process and pursuant to a judicially obtained writ of possession, as authorized by Georgia Code Section 44-7-50, Plaintiffs' wrongful eviction claim fails as a matter of law. (Doc. 2-1 at 19). Plaintiffs respond that the sufficiency of their wrongful eviction claim cannot be determined until their breach of contract and wrongful foreclosure claims are decided on the merits. (Doc. 6 at 13).

The exclusive method by which a landlord may evict a tenant is through a properly instituted dispossessory action filed pursuant to Georgia Code Section 44-

24

7-50.  Steed v. Fed. Nat'l Mortg. Corp., 689 S.E.2d 843, 848 (Ga. Ct. App. 2009).

Where former owners of real property remain in possession after a foreclosure sale,

they become tenants at sufferance.  Steed, 689 S.E.2d at 843.  A landlord-tenant

relationship exists between a legal title holder and a tenant at sufferance such that

the dispossessory procedures set forth in Georgia Code Section 44-7-50 are

applicable.  Ikomoni v. Exec. Asset Mgmt., LLC, 709 S.E.2d 282 (Ga. Ct. App.

2011).  If the landlord evicts a tenant without filing a dispossessory action and

obtaining a writ of possession, the landlord can be held liable for wrongful eviction

and trespass.  Id. at 286 n.1.

Here, Plaintiffs allege that they were tenants at sufferance due to the May

2014 foreclosure sale, and that a valid foreclosure sale was a prior condition of a

proper eviction proceeding would have been.  (Compl. ¶¶ 80, 81).  They cite no

legal authority for this position in response to Bayview's Motion.  (Doc. 6 at 13).

Plaintiffs do not allege that Bayview failed to follow the proper procedures for a

dispossessory action or that it failed to comply with the requirements of Georgia

Code Section 44-7-50.  Thus, Plaintiffs fail to state a claim for wrongful eviction.

See Vickers v. Merry Land & Inv. Co., 587 S.E.2d 816, 818 (Ga. Ct. App. 2003)

(holding that where a writ of possession was issued by a magistrate, the lawfulness

of the dispossession "is apparent on its face."); Sturm v. Bank of Am., N.A., No.

2:13-CV-00146-RWS, 2014 WL 2515393, at *3 (N.D. Ga. June 4, 2014) ("To state a claim for wrongful eviction, Plaintiffs must allege facts showing [defendant] failed to follow the proper procedures for dispossessory actions.") (citing <u>Desouza v. Fed. Home Mortg. Corp.</u>, 2011 WL 4102347, at * 4 (S.D.Ga. Sept. 14, 2011) (bare conclusions and no supporting facts beyond the allegations related to the wrongful foreclosure claim are insufficient to sustain a claim for wrongful eviction)).    According, the undersigned **RECOMMENDS** that Bayview's Motion to Dismiss Plaintiff's claim for wrongful eviction (Count 5) be **GRANTED**.

**F.**    **<u>Intentional Infliction of Emotional Distress</u>**

Bayview argues that Plaintiffs' claims for intentional infliction of emotional distress fail as a matter of law because they do not allege any facts suggesting that Bayview's actions were "extreme," "outrageous," or "utterly intolerable," as required for an actionable claim under Georgia law.  (Doc. 2-1 at 21).  Plaintiffs respond that it is plausible that Bayview's alleged failure to comply with the HUD Regulations incorporated into the Security Deed, and the resulting loss of their home, could cause emotional distress.  (Doc. 6 at 15).

To recover under a claim for intentional infliction of emotional distress under Georgia law, a plaintiff must show that the defendant acted recklessly, that

the conduct was extreme and outrageous, that the plaintiff suffered emotional distress as a result of the conduct, and that the emotional distress was severe. Ghodrati v. Stearnes, 723 S.E.2d 721, 723 (Ga. Ct. App. 2012).  To qualify as sufficiently "extreme and outrageous" the conduct at issue "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Kaiser v. Tara Ford, Inc., 546 S.E.2d 861, 868 (Ga. Ct. App. 2001) (citation and punctuation omitted).  The burden that a plaintiff must meet to prevail on a claim for intentional infliction of emotional distress "is a stringent one." Steed, 689 S.E.2d at 851-52.

In this case, Plaintiffs allege that Bayview told Plaintiffs that the foreclosure sale was "on hold" after the death of Michael Kelly in March 2014, but then foreclosed on the Property two months later in May 2014 without prior notice or compliance with the cited HUD regulations.  Plaintiffs also allege that Bayview's conduct was intentional and reckless," "extreme and outrageous," and caused Plaintiffs "severe" emotional distress.  (Compl. ¶¶86, 87, 90).  Such conclusory allegations fail to allege the kind of "extreme and outrageous" conduct that goes "beyond all possible bounds of decency" and would be "utterly intolerable in a civilized community." Canziani v. Visiting Nurse Health Sys., Inc., 610 S.E.2d 660, 662 (Ga. Ct. App. 2005); see Thompson-El v. Bank of Am., N.A., 759 S.E.2d

49, 53 (Ga. Ct. App. 2014) (allegations of a bank's foreclosure, allegedly without plaintiff's knowledge, and the bank's subsequent attempts to remove plaintiff from the property, insufficient to state a claim for intentional infliction of emotional distress); James v. Bank of Am., N.A., 772 S.E.2d 812, 816 (Ga. Ct. App. 2015) (failure to provide proper notice of the foreclosure is insufficient to state a claim for intentional infliction of emotional distress).   According, the undersigned **RECOMMENDS** that Bayview's Motion to Dismiss Plaintiff's claim for intentional infliction of emotional distress (Count 6) be **GRANTED**.

## G.   Punitive Damages and Attorneys' Fees

Bayview argues that Plaintiffs are not entitled to punitive damages or attorneys' fees because their claims fail as a matter of law.   (Doc. 2-1 at 22-23).   Punitive damages and attorneys' fees are available in a suit for wrongful foreclosure.   See Clark v. West, 395 S.E.2d 884, 886 (Ga. Ct. App. 1990) (attorneys' fees and punitive damages available in wrongful foreclosure action as it sounds in tort); Curl v. First Fed. Sav. & Loan Ass'n, 257 S.E.2d 264, 265-66 (Ga. 1979) (affirming award for punitive damages in wrongful foreclosure suit).   In light of the recommendation that Plaintiffs' breach of contract and wrongful foreclosure claim be allowed to proceed, the undersigned **RECOMMENDS** that Plaintiffs' claims for punitive damages and attorneys' fees be allowed to proceed

28

and that Bayview's Motion to Dismiss Plaintiffs' claims for punitive damages and attorneys' fees be **DENIED**.

## VI.   <u>CONCLUSION</u>

For the reasons stated above, the undersigned **RECOMMENDS** that Bayview's Motion to Dismiss the Complaint (Doc. 2) be **GRANTED** in part and **DENIED** in part.  The undersigned recommends **GRANTING** Bayview's Motion with regard to Plaintiffs' claims for promissory estoppel (Count 3), declaratory judgment (Count 4), wrongful eviction (Count 5), and intentional infliction of emotional distress (Count 6).   The undersigned recommends **DENYING** Bayview's Motion with regard to Plaintiffs' claims for breach of contract (Count 1), wrongful foreclosure (Count 2), and punitive damages and attorneys' fees (Counts 6 and 7).

**SO REPORTED and RECOMMENDED** this 23rd day of November, 2015.


Catherine M. Salinas
United States Magistrate Judge