IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**BRENDA M. KELLY**
**and LORIN KELLY,**

                        **Plaintiffs,**

        **v.**                                          **1:15-cv-1496-WSD**

**BAYVIEW LOAN SERVICING,**
**LLC,**

                        **Defendant.**

### OPINION AND ORDER

This matter is before the Court on Defendant Bayview Loan Servicing,

LLC's ("Bayview" or "Defendant") Notice of Removal [1].

## I.      BACKGROUND

On April 1, 2015, Plaintiffs Brenda M. Kelly and Lorin Kelly ("Plaintiffs")

filed their Complaint against Bayview in the Superior Court of Gwinnett County,

Georgia.[1] (Compl. [1.1]).  Plaintiffs assert various state-law claims for breach of

contract (Count One), wrongful foreclosure (Count Two), promissory estoppel

(Count Three), declaratory judgment (Count Four), wrongful eviction (Count

Five), and intentional infliction of emotional distress (Count Six).  The crux of

their claims is that Defendant failed to comply with certain United States

---

[1]      No. 15A-03802-A.

Department of Housing and Urban Development ("HUD") regulations, incorporated by reference into Plaintiffs' Note and Security Deed and which are prerequisites to foreclosure.  Plaintiffs seek compensatory and punitive damages of at least $250,000, declaratory relief, attorney's fees and litigation costs, and to set aside the foreclosure sale.

On May 4, 2015, Defendant removed the Gwinnett County Action to this Court based on federal question and diversity of citizenship jurisdiction. Defendant claims that removal is proper because Plaintiffs' "state-law breach of contract and wrongful foreclosure claims are entirely based on Bayview's alleged non-compliance with the federal HUD regulations . . . [which raises] a substantial question of federal law."  (Notice of Removal at 5).  Bayview also asserts that complete diversity exists among the parties because Plaintiffs "live in Fulton County" and Bayview is a "foreign corporation," and that the amount in controversy exceeds $75,000.00.  (Id. at 8).

## II.    DISCUSSION

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  Arbaugh v. Y&H Corp., 546 U.S. 500, 501 (2006).  The Eleventh Circuit consistently has held that "a court should inquire into whether it has subject matter

jurisdiction at the earliest possible stage in the proceedings.  Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."  Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Federal district courts have original subject-matter jurisdiction in "all civil actions arising under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331, and in "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States," 28 U.S.C. § 1332(a)(1).

Defendant asserts that the Court has federal subject-matter jurisdiction over this action based on the federal question and diversity of citizenship.  The Court first considers whether it has subject-matter jurisdiction based on the existence of a federal question.

A.   <u>Federal Question Jurisdiction</u>

It is undisputed that Plaintiffs' Complaint asserts only state-law claims.[2] The Court therefore has federal question jurisdiction over Plaintiffs' claims only "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." <u>Gunn v. Minton</u>, 133 S.Ct. 1059, 1065 (2013) (citing <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 314 (2005)).

Plaintiffs asserts claims for breach of contract and wrongful foreclosure based on Bayview's alleged noncompliance with HUD regulations which are incorporated by reference into the Security Deed and are prerequisites to foreclosure. Although it appears that Plaintiffs' claims "necessarily raise" the federal issue of Bayview's compliance with HUD regulations, the Court concludes that the claimed federal issue in this case is not substantial. "The substantiality inquiry . . . looks to the importance of the [federal] issue to the federal system as a whole." <u>Gunn</u>, 133 S.Ct. at 1066; <u>see also</u> <u>MDS (Canada) Inc. v. Rad Source Techs., Inc.</u>, 720 F.3d 833, 842 (11th Cir. 2013) (citing <u>Gunn</u>). "[I]t is not enough

---

[2]   The Court notes that "there is no express or implied statutory right of action for HUD violations." <u>See</u> <u>Bates v. JPMorgan Chase Bank, NA</u>, 768 F.3d 1126, 1130-31 (11th Cir. 2014).

that the federal issue be significant to the particular parties in the immediate suit;
that will *always* be true when the state claim 'necessarily raise[s]' a disputed
federal issue . . . ."  Gunn, 133 S.Ct. at 1066 (emphasis and second alteration in
original).  The Supreme Court has identified three factors to consider:

> First, a pure question of law is more likely to be a substantial federal
> question.  Second, a question that will control many other cases is
> more likely to be a substantial federal question.  Third, a question that
> the government has a strong interest in litigating in a federal forum is
> more likely to be a substantial federal question.

MDS, 720 F.3d at 842 (citing Empire Healthchoice Assur., Inc. v. McVeigh,
547 U.S. 677, 700-701 (2006) and Grable, 545 U.S. at 315-316).

Here, Plaintiffs assert that Bayview did not comply with HUD regulations
when it failed to provide loan information to Plaintiffs and did not arrange an
individual loan consultation; failed to adapt its collection techniques to the
individual differences of Plaintiffs or take into account their individual
circumstances; failed to have a face-to-face meeting with Plaintiffs before three
full monthly installments due on the mortgage were unpaid; failed to inform
Plaintiffs of other available assistance and provide the names and addresses of
HUD officials to contact; failed to evaluate loss mitigation techniques and take the
appropriate loss mitigation action; and failed to ensure that all servicing
requirements were met before initiating foreclosure proceedings.  (Compl.

¶¶ 18-25; 37-42; 54-55) (citing 24 C.F.R. §§ 203.508, 203.600, 203.604-606). Plaintiffs' Complaint shows that the issue of Bayview's compliance is factual, rather than a dispute over the meaning or interpretation of HUD regulations.  This dispute is the sort of "fact-bound and situation-specific" claim and its resolution is unlikely to have any impact on the development of federal law.  See Empire Healthchoice Assur., 547 U.S. at 700-701; see also Mun. of Mayaguez v. Corp. para el Dessarrolo del Oeste, Inc., 726 F.3d 8, 14 (1st Cir. 2013) ("Though the ultimate question in [plaintiff's] contract claim is whether [defendant] failed to comply with federal regulations, and thereby breached its contract, this dispute is the sort of 'fact-bound and situation specific' claim whose resolution is unlikely to have any impact on the development of federal law.").  Although the breach of contract and wrongful foreclosure claims require a determination whether Defendant complied with HUD regulations, the government interest in the fact-bound questions of compliance at issue in this case is less significant than its interest in a question of law that will impact future government decision-making or conduct on a wide scale.  See MDS, 720 F.3d at 842.

The Court finds that Plaintiffs' breach of contract and wrongful foreclosure claims, even if they necessarily raise issues of federal law, the issues of compliance with HUD regulations would not be a "substantial question" of federal law.  The

fact-specific nature of Bayview's compliance with HUD regulations, the small likelihood that resolution of it would impact future cases, and the weak interest of the government in federal adjudication of Plaintiffs' state law claims support that the federal law question in this case is not substantial.  See MDS, 720 F.3d at 843; see also Gunn, 133 S.Ct. at 1067.  The Court's subject-matter jurisdiction over this action cannot be based on federal question.

> B.  Diversity of Citizenship

Because the Complaint does not raise a federal question, the Court has subject matter jurisdiction in this case only if there is diversity jurisdiction. Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and the suit is between citizens of different states.  28 U.S.C § 1332(a).  "Diversity jurisdiction, as a general rule, requires complete diversity—every plaintiff must be diverse from every defendant."  Palmer Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1564 (11th Cir. 1994).  "Citizenship for diversity purposes is determined at the time the suit is filed."  MacGinnitie v. Hobbs Grp., LLC, 420 F.3d 1234, 1239 (11th Cir. 2005).  A corporation is a citizen of its state of incorporation and the state in which it has its principal place of business.  Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1021 n.1 (11th Cir. 2004) (citing 28 U.S.C. § 1332(c)(1)).  A limited liability company, unlike a corporation, is a

citizen of any state of which one of its members is a citizen, not of the state where the company was formed or has its principal office.  Id. at 1022.

Here, the parties fail to adequately plead the citizenship of Bayview. Although the parties state that it is a "foreign corporation," Bayview's name— Bayview Loan Servicing, LLC—plainly shows that it is not a corporation but rather a limited liability company.  (See Compl. ¶ 2; Notice of Removal at 8). Bayview is thus a citizen of any state of which one of its members is a citizen.  See Rolling Greens, 374 F.3d at 1022.[3]

The Court requires further information regarding Bayview's members and their citizenship to determine whether diversity jurisdiction exists in this matter.[4] Accordingly, Bayview is required to file a supplement to its Notice of Removal alleging its members and their citizenship.  The Court notes that it is required to remand this action, unless Defendant provides the required supplement alleging sufficient facts to show the Court's jurisdiction.  See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

---

[3]     Even if Bayview is a corporation, the parties' conclusory assertion that it is a "foreign corporation" is not sufficient to show Bayview's citizenship for purposes of determining whether the Court has diversity jurisdiction.

[4]     The Court is satisfied that the amount in controversy exceeds the $75,000.00 jurisdictional limit.  (See Compl. at 24 (seeking actual, special and compensatory damages, and punitive damages of not less than $250,000)).

III.   **CONCLUSION**

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that, on or before January 18, 2016,

Defendant shall file a "Supplement to Removal" that identifies its members and

their citizenship.


**SO ORDERED** this 5th day of January, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE